# MINOT FLOUR MILL COMPANY v. GEORGE W. SWORDS.

## (137 N. W. 828.)

**Appeal and error — insufficiency of assignments of error.**

1. Rule 14 of the supreme court, which requires that an assignment of errors "must, in a way as specific as the case will allow, point out the errors objected to," is not complied with by assignments in the following form: "Defendant assigns as error specification of error No. 3." An assignment which, on its face, fails to advise the court of the alleged error complained of, but merely refers to the place in the printed record in which such alleged error may be found, is wholly insufficient under the above rule.

**Action to recover balance of purchase price — evidence.**

2. In an action to recover an alleged balance due on account as the purchase price of seed grain claimed to have been sold by plaintiff to defendant, there was a substantial conflict in the testimony as to whether two items in the account, one consisting of 34 bushels and 40 pounds, and the other of 40 bushels and 40 pounds, (being the only items in dispute), were delivered by

plaintiff to defendant. The trial court found in plaintiff's favor on such issue.

*Held,* that such finding has ample support in the testimony, and will not be disturbed by this court.

Opinion filed September 21, 1912.

Appeal by defendant from a judgment of the County Court for Ward County, *N. Davis,* J., in plaintiff's favor, and from an order denying a new trial in an action to recover a balance claimed to be due for certain seed wheat alleged to have been sold and delivered by plaintiff to defendant.

Affirmed.

*E. R. Sinkler* and *J. A. Heder,* of Minot, for appellant.

*F. B. Lambert,* of Minot, for respondent.

Fisk, J. Plaintiff sues to recover a balance of $101.70 claimed to be due it from defendant on account as the purchase price of certain seed wheat alleged to have been sold and delivered by plaintiff to defendant in April, 1909. The case was tried in the county court of Ward county without a jury, and resulted in a judgment in plaintiff's favor, from which judgment this appeal is prosecuted. A bill of particulars was served on defendant, and the whole dispute relates to two items only in the account between the parties, as follows:

<blockquote>
April 17, to 34 bu. and 40 lbs. seed wheat ........ $46.80<br>
April 24, to 40 bu. and 40 lbs. seed wheat ........ 54.90
</blockquote>

It is appellant's contention that he neither ordered nor received these items, and he challenges the sufficiency of the evidence to sustain the lower court's decision.

In his brief, appellant has attempted to assign thirty alleged errors, but such assignments do not comply with rule 14 of this court, which rule, among other things, provides: "The appellant's brief . . . shall contain . . . Second. An assignment of errors which need follow no stated form, but must, in a way as specific as the case will allow, point out the errors objected to, and only such as he expects to rely on and ask this court to examine."

Assignments numbered 1 to 29 are all in the following form: "1. Defendant assigns as error specification of error No. 3. (Abstract page 5. of the evidence page 20.)" It is entirely clear that this is not a compliance with either the letter or spirit of such rule. It is true the court is referred to the place in the abstract where the matter complained of may be found. This necessitates a useless waste of the court's time. The purpose of the rule is to enable the court to ascertain from the assignments as contained in the brief of what the alleged error consists. The object of such rule is to require the presentation of the matter raised by the assignment of error so that this court may understand just what it is called upon to decide, without the necessity of going beyond the assignment itself. As stated in 2 Enc. Pl. & Pr. 943: "Just what will constitute a sufficiently specific assignment must depend very largely upon the special circumstances of the particular case; but always the very error relied upon should be definitely and clearly presented, and the court not compelled to go beyond the assignment itself to learn what the question is. The assignment must be so specific that the court is given some real aid, and a voyage of discovery through an often voluminous record not rendered necessary."

On page 941 of the same treatise it is said: "The assignment should refer to the page of the record which the alleged error may be found; but such reference by itself will not constitute a sufficient assignment."

The last assignment is also, we think, too general, and is also subject to the same criticism as the prior assignments. See 2 Enc. Pl. & Pr. page 953, and cases cited.

We might properly decline to notice any of appellant's alleged assignments of error for the foregoing reasons, but we have concluded to briefly notice the various contentions in the body of appellant's brief, and for the purpose of a correct understanding of such contentions a brief statement of the facts is necessary.

Plaintiff, at the times mentioned, was operating a flour mill in the city of Minot, and defendant, George W. Swords, resided in Minot, but owned and operated a farm near such city, his brother John Swords being in charge of such farm as defendant's representative; and while the testimony is not clear as to just what authority he possessed in the operation of such farm, we deem it a fair assumption, from all the testimony, that he possessed general authority from defendant in relation

thereto, and was, in effect, defendant's general agent in the management of such farm. It is an admitted fact that on or about April 11, 1909, the defendant telephoned to plaintiff's manager, William Dunnell, regarding the purchase of certain seed wheat, and was informed by Dunnell that plaintiff would furnish it, and defendant at that time stated that John Swords would call the next morning and get one load. There is a square conflict in the testimony as to the exact conversation which took place between these parties on that occasion, the witness Dunnell testifying that defendant stated that he wanted to purchase three or four loads, while the defendant testified that he stated that he wanted only enough to seed about 30 acres. On the morning of the 12th, John Swords and one Henning, who was employed on defendant's farm, called at the mill, and plaintiff delivered to them 2,750 pounds of seed wheat, the purchase price of which amounted to $61.85. This, as well as certain other items in the account, were paid by defendant, and are not involved in this litigation. On April 17th, Swords and Henning again called at the mill, and there was delivered to them 34 bushels and 40 pounds of seed wheat, and that at that time John Swords stated to Mr. Dunnell that either he or Mr. Henning would be after the next load in a few days; and on April 24th Henning called and procured 40 bushels and 40 pounds of seed wheat, and these last two items were charged by plaintiff's employee to defendant, George W. Swords. Defendant admits that he did not know how much seed wheat would be required to seed such farm, as he did not know how much land John had prepared to be seeded to wheat, although when he purchased the land sometime prior thereto there were only about 30 acres broken.

Defendant insists that the disputed items were not delivered to him, and that he is not legally liable for the purchase price thereof. The case having been tried in the court below without a jury, the findings of that court are, of course, entitled to the same weight as the verdict of a jury, and this court will not disturb such findings if they are supported by competent testimony.

As we view the record, the lower court's findings are amply supported in the testimony, and the judgment of that court must accordingly be affirmed. The basic fallacy running throughout appellant's brief and argument consists in his assumption that John Swords was merely a special agent of his brother, the defendant. As before stated, we do not

think the record justifies such assumption. So far as the testimony discloses, John was apparently managing this farm, and had full authority to do whatever he deemed it necessary to do in the operation thereof; but even if he was a mere special agent, still the trial court, if it believed the testimony of Dunnell, to the effect that defendant ordered over the 'phone three or four loads of said wheat, stating that John would be down after it, would be amply justified in holding defendant liable for the disputed items, even though the last item was delivered to Henning, who was sent there by John according to the testimony. Certainly under these facts, if established, Dunnell would be clearly justified in delivering such grain, and it would not be incumbent upon him to inquire what disposition was to be made of the same, for he had express authority from defendant to deliver three or four loads to John, which would imply that he might deliver to him or to anyone whom he might send to receive it. The testimony discloses that Henning was employed on this farm as a servant, and was subject to John's directions, and if John Swords had a right to get this wheat he certainly had a right to send Henning after it.

It is next contended by appellant that there is no competent proof in the case showing the amount of grain delivered on these two dates. We think such contention without merit. In the first place the amount of these items was not a disputed issue, the defense merely being that plaintiff was not authorized to deliver such seed grain to anyone on defendant's account; in other words, defendant's contention was that he merely ordered one load, or enough to seed 30 acres. Furthermore, the witness Adam Robb, grain buyer for plaintiff, testified to the delivery of the wheat on the 12th, 17th, and 24th days of April, but of course he could not remember the exact amount delivered. And the witness Presby, who was plaintiff's bookkeeper and cashier, testified that invoices for these sales were immediately made out, and mailed on the following days to defendant, and he identified carbon copies thereof, and stated that they constituted the original and only charge or entry on the plaintiff's books. While the testimony does not disclose such to be the fact, the fair inference is that the originals of these invoices were the ones which were mailed to defendant. We think there was sufficient foundation for the introduction of these exhibits, and that they were competent testimony under the statute of this state (Session Laws 1907,

page 173), as follows: "Any entries in a book or other permanent form, in the usual course of business, contemporaneous with the transactions to which they relate and as a part of or connected with such transactions, made by persons authorized to make the same, may be received in evidence when shown to have been so made, upon the testimony either of the person who made the same, or, if he be beyond the reach of a subpœna of the trial court or insane, of any person having custody of the entries and testifying that the same were made by a person or persons authorized to make them in whose handwriting they are, and that they are true and correct to the best of his knowledge and belief. In case such entries are, in the usual course of business, also made in other books and papers as a part of the system of keeping a record of such transactions, it shall not be necessary to produce as witnesses all of the persons subject to subpœna who were engaged in the making of such entries; but before such entries are admitted the court shall be satisfied that they are genuine and in other respects within the provisions of this section."

Suffice it to say that, in any event, we are convinced, after reading the record, that the court was amply justified in finding as it did that these items were delivered as contended for by plaintiff, and we find no valid reason for disturbing the decision of the trial court.

Judgment affirmed.